IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ARLETA S. COMSTOCK, | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 06-6300-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Alan Stuart Graf
P. O. Box 98
Summertown, Tennessee 38483

    Attorney for Plaintiff

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Linda S. McMahon as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Richard M. Rodriguez
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Aleta S. Comstock brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments,

Page 3 - OPINION AND ORDER

the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Comstock had severe impairments of cognitive disorder, depression, anxiety disorder, and asthma. However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. He found that Comstock was not entirely credible when describing her symptoms. The ALJ accepted the limitations discussed by the medical expert, Dr. Nance, and found that Comstock had the residual functional capacity for simple, repetitive tasks with occasional contact with the public, should avoid environmental irritants such as dusts and fumes, and should avoid more than occasional exposure to chemicals. Based on vocational testimony, the ALJ found that Comstock could perform the jobs of small products assembler, electronics worker, and packing line worker and thus was not disabled under the Act.

## FACTS

Comstock, who was 41 at the time of the ALJ's opinion, claims to be disabled since July 28, 2001 due to a learning disability, depression, anxiety, and asthma. She obtained a GED after dropping out of school in the sixth grade, and has worked as a cannery worker, maid, and food service worker. Comstock is married and lives with her husband. She has two grown children.

In 2002, Comstock's mother reported that Comstock left the house several times a week to visit friends and relatives and to go grocery shopping. She fishes, hunts, camps, gardens, and does needlework and arts and crafts but could not walk for very long because of breathing problems. Comstock's mother also reported that Comstock prepares the meals and does the laundry, dusting, and vacuuming unless she is using oxygen because of an asthma attack.

Comstock complains that she does not feel like seeing people; feels sad, anxious, and confused; tires easily; and rests several times a day. She states that her husband helps with some of the household chores because she has trouble keeping up and does not like leaving the house.

## DISCUSSION

I.  <u>Mental Impairment Limitations</u>

Comstock contends that the ALJ failed properly to consider her learning disorder, reading disorder, disorder of written expression, mathematics disorder, and borderline intellectual functioning because they are not adequately represented by the phrase "cognitive disorder." However they are described, Comstock argues that her disorders are more limiting than the ALJ's limit of simple, repetitive tasks. Comstock claims that she could not perform any math or reading for a job. She refers to the Dictionary of Occupational Titles ("DOT") descriptions for the jobs selected by the ALJ and notes the reading and writing requirements, which Comstock contends are above a middle elementary grade level.

The Commissioner argues that these additional conditions, for which Comstock has been diagnosed, do not cause any additional limitations which the ALJ failed to consider.

Comstock has been tested by psychologists several times. In 1996, Dr. Greenough determined that Comstock had an IQ in the borderline range of intellectual ability with reading at the 4th to 5th grade level, spelling at the 2nd grade level, written expressive skills at the 3rd to 4th grade level, and arithmetic at the 3rd grade level. The psychologist thought that Comstock's spelling and arithmetic deficits were not likely to be an issue vocationally unless she was in an academic situation or a job requiring arithmetic or writing skills. Tr. 190-92.

In March 2003, Dr. Smolen relied on Dr. Greenough's testing and concluded that Comstock could understand and remember very simple instructions, would have some difficulty sustaining attention and concentration, and would not have substantial problems in social relationships. Tr. 308.

On November 25, 2003, Dr. McQueen wrote a report based on her treatment of Comstock since September 29, 2003. Dr. McQueen concluded that Comstock had low normal intelligence "but her adaptive functioning is quite impaired due to inability to multiply or divide or do more than double digit subtraction and addition, poor memory, below-normal social intelligence, and severely impaired cognitive energy and stamina." Tr. 317. "[Comstock] is not able to keep a checkbook or handle her own funds, read and remember and spell at a near-average level, . . . cannot cope with workplace interpersonal stress or friction, or be on her feet for more than one hour at a time." Tr. 318.

In September 2005, Comstock was examined by Dr. Pitchford. Testing placed Comstock at an IQ in the extremely low range, which was significantly lower than the test results in 2003, reading at a 7th grade level, and spelling and arithmetic at a 3rd grade level. Due to the reduction in IQ test results and the effect of the medication Comstock was taking, Dr. Pitchford concluded that Comstock's IQ was best estimated in the borderline range. Tr. 417. Dr. Pitchford stated that Comstock was moderately limited in her ability to carry out detailed instructions and in her ability to respond appropriately to work pressures in a usual work setting. Tr 422-23.

There is nothing in the record to relate the reading and arithmetic requirements in the DOT descriptions with the test results which are stated by reference to school grade levels. None of the psychologists interpreted any of the test results in a way which can be compared to the

Page 7 - OPINION AND ORDER

DOT. There is also no evidence that the ALJ's limitation of simple, repetitive tasks would include jobs requiring reading and arithmetic skills above the middle elementary grade level at which Comstock functions. Likewise, there is no evidence that Comstock left any of her previous positions due to problems with reading or arithmetic. Her complaint is that she could not keep up, a problem of a more general nature.

I am unpersuaded that the ALJ should have included additional limitations, particularly the ones posed in the hypothetical by Comstock's attorney that the jobs could include no reading or math. I conclude that the ALJ did not err by limiting Comstock to simple, repetitive tasks without further limitations concerning her reading and arithmetic skills.

II.     Physician Opinions

Comstock contends that the ALJ improperly treated the opinions of several physicians.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as

Page 8 - OPINION AND ORDER

substantial evidence when they are supported by and are consistent with other evidence in the record.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

    A.    Dr. Nance

Comstock contends that even though the ALJ accepted the opinion of medical expert Dr. Nance, the ALJ failed to include in the hypothetical Dr. Nance's opinion that Comstock has marked limitations in the ability to set realistic goals and make plans independently of others.

The Commissioner argues that the ALJ did consider these limitations and questioned Dr. Nance about them during the hearing.

When questioned by Comstock's attorney at the hearing, Dr. Nance stated that Comstock has marked limitations in her ability to set realistic goals or make plans independently of others. The ALJ addressed this as follows:

> Dr. Nance testified that the claimant has marked limitations in the ability to set realistic goals and make plans independently of others.  She has moderate restrictions in the ability to work with the public and in the ability to perform detailed tasks.  He did not believe she would have difficulty performing simple, repetitive tasks on a sustained basis.  The testimony of Dr. Nance is consistent with the treatment record and is accepted as credible.  It is consistent with a capacity for simple, routine work with occasional public contact.

Tr. 19.

Comstock notes that the Mental Residual Functional Capacity Assessment categorizes questions about the ability to understand and remember simple and detailed instructions in the "Understand and Memory" section, questions about the ability to carry out simple and detailed instructions in the "Sustained Concentration and Persistence" section, and the question about the ability to set realistic goals or make plans independently of others in the "Adaptation" section.

Page 9 - OPINION AND ORDER

Based on this categorization, Comstock argues that her marked limitation on setting goals and making plans is not covered by the ALJ's limitation to simple, routine work.

I agree with Comstock that the abilities are quite different and require their own limitations. A person may be able to remember and carry out detailed, complex instructions but be unable to set goals or make plans without significant assistance. Consequently, the ALJ must either state a limitation in the hypothetical for Comstock's goals/plans marked limitation or explain why he is not adopting that part of the doctor's opinion. The ALJ erred when he failed to do one or the other.

B.  DDS Psychologists

Comstock argues that the ALJ failed to address the opinions of the DDS psychologists that she could understand, remember, and carry out simple *unrushed* instructions on a routine basis.

The Commissioner contends that this limitation was internally inconsistent with the DDS psychologists' opinion that Comstock was not significantly limited in her ability to understand, remember, and carry out very short and simple instructions. The Commissioner asks me to infer this reason from the ALJ's decision.

I again disagree with the Commissioner. When the DDS psychologists completed the narrative portion of the form, they added the additional limitation of the instructions being unrushed. Because the DDS psychologists added a limiting word in addition to the phrases used in the check-the-box portion of the form, I can only conclude that they considered the additional limitation to be important. As with Dr. Nance's limitation discussed above, the ALJ must either address the limitation in the hypothetical or explain why he is not adopting it.

II.     Remedy

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id. Because the ALJ did not correctly address two limitations, the vocational expert testimony does not support a finding of no disability.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the

Page 11 - OPINION AND ORDER

national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Even if I credit both limitations, it is unclear if jobs exist which Comstock could perform. Accordingly, I will remand the case for further proceedings to allow the ALJ either to adopt the limitations and receive additional vocational expert testimony concerning a new hypothetical or to explain why he does not adopt them.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this ____23rd_____ day of July, 2007.

          /s/ Garr M. King
          Garr M. King
          United States District Judge